**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KEVIN ALMY,

     Plaintiff

v.

JAMES DZURENDA, et. al.,

     Defendants

Case No.: 3:17-cv-00045-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 22

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 22, 22-1 to 22-10.)[1] Plaintiff filed a response. (ECF No. 31.) Defendants filed a reply. (ECF Nos. 36, 36-1 to 36-4.)

After a thorough review, it is recommended that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff was an inmate in the custody of the Nevada Department of Corrections (NDOC) before he was released on parole in August 2017. He is proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 7.) Defendants are NDOC Director James Dzurenda, NDOC Offender Management staff member Ronda Larsen and and Board of Prisons member (and former Governor) Brian Sandoval.

---

[1] The motion was originally filed as ECF Nos. 21, 21-1 to 21-10, but a corrected image/document was subsequently filed as ECF Nos. 22, 22-1 to 22-10.

Plaintiff alleges that the Defendants did not apply the proper statutes to calculate his parole, which adversely affected his sentence. Specifically, he alleges in Count I that Nevada Revised Statute (NRS) 213.1215 creates a statutory right of parole 12 months before the expiration of the maximum term for certain inmates, which he asserts gives a mandatory parole date. He avers that Larsen erroneously calculated Plaintiff's mandatory parole date to be only six months prior to his October 22, 2019, sentence expiration date. He contends that Dzurenda and Sandoval knew of this erroneous calculation practice yet allowed it to continue with respect to Plaintiff (and other inmates). He alleges he was denied the benefit of NRS 213.1215 without a hearing or other due process.

In Count II, he alleges that his sentence arises from events occurring in June of 2006, and the statute in effect at the time—NRS 209.4465—provided that statutory credits apply to eligibility for parole. In addition, NRS 213.131 provides that NDOC shall determine when a prisoner is eligible to be considered for parole and notify the board of eligibility, without which the board is precluded from convening a hearing. He avers that since June of 2006, the Defendants failed to deduct earned statutory credits from his parole eligibility which unduly lengthened his incarceration. He claims that if his deductions were properly calculated, he would have received a parole hearing at two years, instead of four, and every two years thereafter. He asserts that he contacted the Defendants about this issue, but his letters were ignored. He alleges that NDOC corrected this for another inmate, but did not for Plaintiff, referencing *Vonseydewitz v. LeGrand*, No. 66159, 2015 WL 3936827, at *1 (Nev. June 24, 2015).

If Plaintiff remained in prison, his section 1983 claims would be barred since they challenge the duration of his confinement; however, because Plaintiff had been paroled after he initiated the action, he was allowed to bring a section 1983 challenge. (*See* Screening Order, ECF

No. 6, citing *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002)). As a result, the court determined Plaintiff could  proceed with his claims under the Due Process Clause and the Equal Protection Clause. (*Id.*)

Defendants move for summary judgment, arguing as to Count I: (1) Plaintiff failed to exhaust his administrative remedies before filing suit; (2) he lacks standing because he suffered no injury in fact; (3) NRS 213.1215 provides no vested liberty interest to an inmate in knowing his mandatory parole date; and (4) Defendants are entitled to qualified immunity.

As to Count II, Defendants argue: (1) the claim is barred by issue preclusion as Plaintiff previously litigated whether NDOC was correctly applying NRS 209.4465 in his Nevada habeas petition; (2) Plaintiff was not similarly situated to the inmate who allegedly received the correct calculation; and (3) they are entitled to qualified immunity.

Finally, Defendants argue that Plaintiff's case does not fall within the exception of *Nonnette v. Small*, and should be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994).

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

1  (quotation marks and citation omitted). "Where the record taken as a whole could not lead a

2  rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

3  *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary

4  judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*.

5  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set

6  forth specific facts by producing competent evidence that shows a genuine dispute of material

7  fact for trial. *Celotex*, 477 U.S. at 324.

8      At summary judgment, the court's function is not to weigh the evidence and determine

9  the truth but to determine whether there is a genuine dispute of material fact for trial. *See*

10 *Anderson*, 477 U.S. at 249. While the evidence of the nonmoving party is "to be believed, and all

11 justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is

12 merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-

13 50 (citations omitted).

## III. DISCUSSION

### A. Facts

16      In June of 2007, Plaintiff was found guilty of crimes that occurred in 2006, including:

17 first-degree arson (Count 1), burglary while in possession of a firearm (Count 2), and attempted

18 murder with the use of a deadly weapon (Counts 3 and 4). (ECF No. 22-2 at 3-4, 13-15; ECF No.

19 22-3 at 1-3.) His sentence of incarceration was as follows: (1) Count 1–a maximum of 120

20 months with minimum parole eligibility of 36 months; (2) Count 2–a maximum of 120 months

21 with minimum parole eligibility of 36 months (consecutive to Count 1); (3) Count 3–a maximum

22 of 140 months with minimum parole eligibility of 48 months, plus an equal and consecutive term

23 of 140 months with a minimum parole eligibility of 48 months for the use of a deadly weapon;

(4) Count 4–a maximum of 140 months with minimum parole eligibility of 48 months, plus an equal and consecutive term of 140 months with a minimum parole eligibility of 48 months for the use of a deadly weapon, with Counts 3 and 4 running concurrent to Counts 1 and 2. (ECF No. 22-2 at 14-15; ECF No. 22-3 at 3-4.)

Plaintiff was incarcerated within NDOC from October 17, 2007, until he was released on parole on August 7, 2017. (ECF Nos. 22-1, 22-4 (order granting parole).)

In June of 2016, Plaintiff filed a habeas petition in the First Judicial District Court of the State of Nevada in Carson County. (ECF No. 21-2.) The petition was filed "to correct errors in sentence calculations by [NDOC]." He asserted that he had learned NDOC was not computing his time served in accordance with Nevada statutes in place at the time the offenses were committed. He claimed, as he does here, that NDOC failed to deduct statutory credits earned under NRS 209.4465. He attached to his petition a letter he sent to Offender Management regarding the computation of time, citing *Vonseydewitz v. LeGrand,* and argued that under NRS 209.4465, and accounting for his credits, his parole eligibility date should be adjusted. (ECF No. 21-2 at 31.) He received a response from NDOC that the order (in the *Vonseydewitz* case) was unpublished and not binding as to any other inmate under similar circumstances. (*Id*. at 32.)

On August 5, 2016, Judge Russell denied Plaintiff's habeas petition, finding it lacked merit. (ECF No. 21-5.) Judge Russel explained that in 2006, when Plaintiff committed his offenses, NRS 209.4465(7) stated that credits earned must be deducted from the maximum term and apply to eligibility for parole "unless the offender was sentenced pursuant to a statute which specifies a minimum sentence that must be served before a person becomes eligible for parole." (ECF No. 21-5 at 3.) Judge Russell noted that Plaintiff was serving two sentences of 48-140

months for deadly weapon enhancements to the crime of attempted murder, under NRS 193.165, which provided that anyone found guilty of the crime of using a firearm or deadly weapon in commission of a crime "shall be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for the crime." (*Id*.) At the time he committed the offense, an attempt to commit a category A felony (murder), was punishable by imprisonment for a "minimum term of not less than 2 years and a maximum term of not more than 20 years." (*Id*.) His other sentence was for burglary with the use of a firearm under NRS 205.060, which in 2006 was a category B felony, and punishable for "a minimum term of not less than 2 years and a maximum term of not more than 15 years." (*Id*.)

Judge Russell concluded that the statutes under which he was convicted specified a minimum sentence, excluding him from the applicability of NRS 209.4465(7).  (*Id*. at 3-4.) Consequently, Judge Russell found that NDOC properly refused to apply credits to Plaintiff's minimum terms. (*Id*. at 4.)

On November 16, 2016, Plaintiff filed an "informal" appellate brief, appealing the order denying his habeas petition, arguing Judge Russell's conclusion was inconsistent with the Nevada Supreme Court's opinion in *Vonseydewitz*. (ECF No. 22-6.)

Plaintiff filed his in forma pauperis application and proposed complaint in this action on January 24, 2017. (ECF Nos. 1, 1-1.)

On September 13, 2017, the Nevada Supreme Court issued an order dismissing Plaintiff's appeal of the order denying his habeas petition. (ECF No. 22-7.) The basis for the dismissal of the appeal was that the Attorney General had advised the Nevada Supreme Court that Plaintiff had received a parole hearing on his final sentence and was granted parole. A parole hearing was

1 the only relief available to Plaintiff, and he was granted parole, and there is no right to a

2 retroactive grant of parole, so his claim was deemed moot.

3 **B. Count I–Exhaustion**

4     Defendants argue that Plaintiff filed a grievance alleging that NDOC had not been

5 applying his statutory credits to Plaintiff's parole eligibility consistent with *Vonseydewitz*, but did

6 not raise any issues related to NRS 213.1215 or Plaintiff's mandatory parole release date or the

7 alleged miscalculation of the mandatory parole release date. Plaintiff was still incarcerated when

8 he filed his complaint; therefore, Defendants contend he was required to exhaust administrative

9 remedies before filing.

10     The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought

11 with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

12 prisoner confined in any jail, prison, or other correctional facility until such administrative

13 remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his

14 administrative remedies irrespective of the forms of relief sought and offered through

15 administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

16     A grievance is sufficient "if it alerts the prison to the nature of the wrong for which

17 redress is sought." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin v.

18 Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). The grievance "need not include legal terminology

19 or legal theories" as its "primary purpose ... is to alert the prison to a problem and facilitate its

20 resolution, not to lay groundwork for litigation." *Griffin*, 557 F.3d at 1120. The grievance

21 process is only required to "alert prison officials to a problem, not to provide personal notice to a

22 particular official that he may be sued." *Jones*, 549 U.S. at 219.

23

The exhaustion requirement does not apply to non-prisoners. *See Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000). Plaintiff was incarcerated when he filed his complaint; therefore, he was required to exhaust his administrative remedies before filing suit. *See id.; Jackson v. Fong*, 870 F.3d 928 (9th Cir. 2017).

Defendants did not provide the applicable regulation but did provide it with their reply brief. (ECF No. 36-1.) Within NDOC, prisoners must attempt to informally resolve an issue and then proceed through three grievance levels to exhaust administrative remedies: informal, first and second.

Defendants have submitted evidence that Plaintiff's grievance only relates to the issues raised in Count II (NRS 209.4465 and the *Vonseydewitz* case), and not the issues raised in Count I (NRS 213.121's mandatory parole date and the alleged erroneous calculation of his parole date). Defendants should have provided the actual grievance documentation, and not just the grievance summaries. Fortunately, Plaintiff submitted a copy of the actual grievance documentation in support of his opposition.

Plaintiff argues that he exhausted his administrative remedies in grievance 2006-30-23817. (ECF No. 31 at 31-40.) At the informal level, Plaintiff stated: "I hereby grieve the sole issue that NDOC has not provided 10 days per month deduction off my parole eligibility as I am entitled pursuant to my 2006 charges ... and the recent Vonseydewitz v. LeGrand ruling of the Nevada Supreme Court[.]" (ECF No. 31 at 32.) He asked for his credit history to be recalculated and the award of a timely parole hearing as well as for monetary relief. (*Id*. at 33.) NDOC responded that the *Vonseydewitz* order only applied to inmate Vonseydewitz, and was not binding on all inmates. (*Id*. at 35.)

Plaintiff filed a first level grievance, stating that in 2006, NRS 209.44652 provided for statutory credits to apply toward eligibility for parole. (*Id*. at 36.) The first level response agreed with the informal level response. (*Id*. at 38.)

Plaintiff filed his second level grievance reiterating his claim that NDOC was violating the law. (*Id*. at 39.) The second level response agreed with the response given at the informal and first levels. (*Id*. at 40.)

It is clear that Plaintiff's grievance raised the issue of application of statutory credits to parole eligibility under NRS 209.4465 that he has asserted in this action in Count II. The grievance does not discuss NRS 213.1215 and the statutory right to parole 12 months before expiration of the maximum term. While Plaintiff was not required to mention the specific statutes, he was required to apprise prison officials of the wrong for which he sought redress. Here, he discussed their alleged failure to apply statutory credits to eligibility for parole. This did not alert them of the separate issue of a statutory right to parole 12 months before expiration of the maximum term. Therefore, he failed to exhaust his administrative remedies as to the claim asserted in Count I.

Plaintiff also argues that he sent letters to the relevant NDOC officials, but this does not comply with AR 740's requirements that he proceed through three grievance levels to exhaust administrative remedies.

While an unexhausted claim is usually dismissed without prejudice, AR 740 provides that an inmate must initiate the grievance process within six months. (ECF No. 36-1 at 6.) Plaintiff would be unable to do so. Therefore, the claim should be dismissed with prejudice.

In the future, Defendants should provide both the applicable version of AR 740 as well as the actual grievance documentation to support the affirmative defense of failure to exhaust administrative remedies.

**C. Count II**

**1. Issue Preclusion**

With respect to Count II, Defendants first argue that the claim is barred by the doctrine of issue preclusion because Plaintiff previously litigated the issue of whether NDOC correctly applied NRS 209.4465 to him in his State habeas proceeding.

Plaintiff argues that civil litigation is not precluded by the prior state court habeas proceedings. He analogizes his case to that of O.J. Simpson, who was still sued civilly after a jury did not convict him criminally.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion" *Taylor v. Sturgell*, 552 U.S. 880, 892 (2008); *Five Star Capital Corp. v. Ruby,* 124 Nev. 1048, 1051-52, 194 P.3d 709, 711 (Nev. 2008). "The Federal Full Faith and Credit Statute, 28 U.S.C. §1738, requires federal courts to 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Gonzales*, v. *California Department of Corrections*, 739 F.3d 1226, 1231 (9th Cir. 2014) (quoting *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984)). In *Silverton v. United States Department of Treasury*, 644 F.2d 1341, 1346-47 (9th Cir. 1981), the Ninth Circuit addressed whether "a §1983 claim [may] be precluded by a prior adjudication on that claim in a state habeas proceeding," and the court concluded that "because of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical *issue* from being relitigated in a subsequent §1983 action if the state habeas court afforded a full and fair opportunity for the

issue to be heard and determined under federal standards." *Silverton*, 644 F.2d at 1346-47

(emphasis added). Federal courts apply the res judicata rules of the court that rendered the

underlying judgment, which in this case would be Nevada.

Claim preclusion applies to all claims that were or could have been raised in the initial

case, whereas issue preclusion only applies to issues that were actually and necessarily litigated

and upon which there was a final determination on the merits. *Five Star*, 124 Nev. at 1055, 194

P.3d at 713. As *Five Star* described it:

> "[C]laim preclusion applies to preclude an entire second suit that is
> based on the same set of facts and circumstances as the first suit,
> while issue preclusion ... applies to prevent relitigation of only a
> specific issue that was decided in a previous suit between the
> parties, even if the second suit is based on difference causes of
> action and different circumstances."

*Id.*

In Nevada, there are three basic requirements for claim preclusion: (1) the parties or their

privies are the same; (2) the final judgment is valid; and (3) the subsequent action is based on the

same claims or any part of them that were or could have been brought in the first case. *Five Star,*

124 Nev. at  1054, 194 P.3d at 713.

Nevada has four requirements for issue preclusion: (1) the issue decided in the prior

litigation must be identical to the issue presented in the current action; (2) the initial ruling must

have been on the merits and have become final; (3) the party against whom the judgment is

asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue

was actually and necessarily litigated. *Five Star*, 124 Nev. at 1055, 194 P.3d at 713 1051-52.

Here, Defendants assert that Count II fails because of issue preclusion. The purpose of

issue preclusion is "'to prevent multiple litigation causing vexation and expense to the parties and

wasted judicial resources by precluding parties from relitigating issues.'" *Kirsch v. Traber*, 414

P.3d 818, 821 (Nev. 2018) (quoting *Univ. of Nev. v. Tarkanian*, 110 Nev. 581, 598, 879 P.2d 1180, 1191 (1994)).

First, the court must address whether same issue was raised in both this action and the state habeas proceeding.

Plaintiff argues that Judge Russel failed or refused to address that NDOC improperly failed to apply the pre-2007 version of NRS 209.4465, and that the pre-2007 version of NRS 209.4465 did not prevent deductions from minimum sentence terms, as the 2007 version did. (ECF No. 31 at 5.)

Judge Russell did not fail to address these issues, Plaintiff simply disagrees with Judge Russel's conclusion on the issues.

In his habeas petition, Plaintiff specifically asserted that he was convicted of offenses that occurred in June of 2006, and NDOC was not computing his time served correctly. (ECF No. 21-2 at 4.) Specifically, he claimed that NDOC failed to deduct statutory credits earned under NRS 209.4465 from his minimum sentence. (*Id*.) He went on to state that the issue was the meaning and interrelationship between the statute regarding application of statutory credits— NRS 209.4465—and the statutes under which he was sentenced. (*Id*. at 5.) He argued that during the relevant time period (2006), NRS 209.44652 provided that statutory credits apply to eligibility for parole except when the offender was sentenced under a statute which specified a minimum sentence that had to be served before a person becomes eligible for parole. (*Id*.) Plaintiff claimed that NDOC was applying that exception to him, and was not deducting his statutory credits from his minimum sentence. (*Id*. at 6.) He contended that while the statutes under which he was sentenced provided for minimum terms, it did not necessarily follow that they specified a minimum sentence that had to be served before he became eligible for parole

13

that would trigger NRS 209.4465's exception. (*Id*.) He asserted that sentencing statutes at the time either provided a minimum and maximum sentence or a maximum with eligibility for parole beginning when a minimum number of years had been served. (*Id*.) He argued that if the legislature wanted the former to come within NRS 209.4465's exception, it could have used the parole eligibility verbiage in the latter sentencing statutes. (*Id*.) Plaintiff's sentencing statutes set forth a minimum-maximum requirement, and not the maximum and parole eligibility after a minimum number of years requirement; therefore, he argued that NRS 209.4465's exception did not apply. (*Id*. at 6-8.)

He maintained that NDOC was misapplying the exception to his sentences by not taking into account his sentencing statute's language. (*Id*. at 8.) Alternatively, he argued the trial court used the wrong verbiage in his judgment of conviction because he was convicted and sentenced in 2007[2], while the crimes occurred in 2006, and/or it was misapplying the amendments that occurred to NRS 209.4465 in 2007. (*Id*. at 8-9.) Regardless of the reason for doing so, he took the position that the failure to make the deductions from his parole eligibility was in error. (*Id*. at 9.)

In his order, Judge Russell characterized the issue presented as follows: "Almy contends that the NDOC has erred by refusing to interpret NRS 209.4465(7)(b) to apply his earned credits toward the minimum terms of his sentences." (ECF No. 21-5 at 2.) Judge Russell subsequently stated: "Almy's petition challenges the NDOC's calculation of his sentences pursuant to NRS 209.4465. He argues that the exception outlined in NRS 209.4465(7)(b) does not apply to his sentences and that he was wrongly denied the application of statutory credits to his minimum

---

[2] The judgment of conviction contained the maximum-parole eligibility after a minimum number of years language and not the minimum-maximum language from the statutes. (*See* ECF No. 21-3 at 3-4.)

1    sentences." (ECF No. 21-5 at 2.) Judge Russell then cited the relevant language from NRS

2    209.4465(7) as it existed in 2006 that credits earned under that statute "[a]pply to eligibility for

3    parole *unless the offender was sentenced pursuant to a statute which specifies a minimum*

4    *sentence that must be served before a person becomes eligible for parole*." (ECF No. 21-5 at 3,

5    emphasis added by Judge Russell.)

6           Judge Russel went on to state that Plaintiff was serving two sentences of 48-140 months

7    for deadly weapon enhancements to the crime of attempted murder, and the judgment of

8    conviction reflected that he was convicted and sentenced under NRS 193.165, which in 2006

9    stated the punishment was imprisonment for a term equal to and in addition to the term of

10   imprisonment prescribed by statute for the crime. (ECF No. 21-5 at 3.) Judge Russell indicated

11   that at the time of the offense, an attempt to commit a category A felony was punishment by

12   imprisonment for a minimum term of not less than 2 years and a maximum term of not more than

13   20 years. (*Id*.) The remaining sentence for burglary with the use of a firearm was punishable (in

14   2006) by a term of imprisonment with minimum of not less than 2 years and a maximum of not

15   more than 15 years. (*Id*.)

16          Judge Russell discussed Plaintiff's argument that the statutes under which he was

17   convicted did not specify a minimum sentence that must be served before he becomes eligible

18   for parole (thus triggering the exception in NRS 209.4465). (*Id*.) Judge Russell disagreed,

19   reasoning that any statute designating a minimum term of imprisonment inherently sets the

20   minimum sentence the offender must serve before becoming eligible for parole. (*Id*.) Judge

21   Russell cited to NRS 213.120, which governed parole eligibility, and at the time of Plaintiff's

22   offenses said an offender such as Plaintiff "may be paroled when he has served the minimum

23   term of imprisonment imposed by the court." (*Id*. at 3-4.) That statute also provided that statutory

1  credits "may reduce only the maximum term of imprisonment imposed and must not reduce the

2  minimum term of imprisonment." (*Id.* at 4.) Since Plaintiff was sentenced under statutes that

3  required him to serve a minimum term of not less than two years, Judge Russell found he had to

4  serve at least two years before he was parole-eligible; therefore, he concluded NDOC properly

5  refused to apply the credits to Plaintiff's minimum terms and denied the habeas petition. (*Id.*)

6        In Count II of his federal civil rights complaint, as in his habeas petition, Plaintiff alleged

7  that NDOC's offender management officials refused to deduct his earned statutory credits from

8  his minimum parole eligibility under the pre-2007 version of NRS 209.4465. (ECF No. 7 at 5.)

9  He alleged that his sentenced arose from events occurring in 2006, and NRS 209.4465 at that

10 time provided that statutory credits apply to eligibility for parole, but NDOC failed to do so. (*Id.*

11 at 5-7.)

12       The issue presented in the habeas petition is identical to that presented in Count II of this

13 federal civil rights action: whether NDOC properly or improperly refused to apply statutory

14 credits to his minimum parole eligibility under NRS 209.4465, as it existed in 2006. Therefore,

15 Defendants satisfy this prong of the issue preclusion analysis.

16       Second, the court considers whether the  prior proceeding came to a final judgment on the

17 merits.

18       Plaintiff argues that it was not a final decision on the merits because the Nevada Supreme

19 Court dismissed his appeal without review on the merits, and instead deemed the appeal moot

20 based on the fact that Plaintiff had been granted parole. (ECF No. 31 at 5, 16.)

21       Nevada has adopted the Restatement (Second) of Judgments' approach to finality. That is:

22 "a judgment is final if it is 'sufficiently firm.'" *Kirsch*, 414 P.3d at 821 (citing Restatement

23 (Second) of Judgments § 13 (Am. Law. Inst. 1982)). The test of finality, as described by the

1    Restatement's comments is "whether the conclusion in question is procedurally definite and not

2    whether the court might have had doubts in reaching the decision." *Id*. (citing Restatement

3    (Second) of Judgments § 13 at cmt. G)." "Finality will be lacking if an issue of law or fact

4    essential to the adjudication of the claim has been reserved for future determination," "or "if the

5    decision was avowedly tentative." *Id*. (citing cmts. b, g.) "Factors indicating finality include

6    (a) "that the parties were fully heard," (b) "that the court supported its decision with a reasoned

7    opinion," and (c) "that the decision was subject to appeal." *Id*. This approach "accord[s] finality

8    to any judgment a court intended to definitively resolve an issue fully litigated between parties."

9    *Id*. at 822.

10       Here, the parties were fully heard. Plaintiff filed a lengthy petition for writ of habeas

11    corpus; the court supported its decision with a reasoned opinion; and the decision was subject to

12    an appeal.

13       Plaintiff did in fact appeal the state district court decision (ECF No. 21-6), and the

14    Nevada Supreme Court dismissed the appeal as moot because Plaintiff had been given a parole

15    hearing and was granted parole (ECF No. 21-7). This left the decision of the district court on the

16    merits in place. Therefore, it should be given preclusive effect. Had the Nevada Supreme Court

17    denied the appeal as moot and vacated the lower court judgment, that would be a different story.

18    That is not the case here, and the Nevada Supreme Court left the lower court determination

19    intact. Therefore, Defendants satisfy this prong of the issue preclusion analysis.

20       Third, the court must determine whether the party against whom the judgment is asserted

21    was a party or in privity with a party to the prior litigation.

22       Plaintiff argues that the only defendant in the habeas proceeding was Isidro Baca,

23    NNCC's warden, and here the defendants are Larsen, Dzurenda, and Sandoval. The same parties

or their privies *on both sides* is a requirement of claim preclusion and not issue preclusion. Issue preclusion requires that *the party against whom the judgment is asserted* must have been a party (or privy) in the prior litigation. Here, the judgment is asserted against Plaintiff. Plaintiff was a party to the prior litigation. Therefore, this prong of issue preclusion is satisfied.

Fourth, an issue is "necessarily and actually litigated" if the "court in the prior action addressed and decided the same underlying factual issues." *Kahn v. Morse & Mowbray*, 121 Nev. 464, 117 P.3d 227, 235 (Nev. 2005) (citation omitted). In other words, "'[w]hen an issue is properly raised ... and is submitted for determination, ... the issue is actually litigated.'" *Frei v. Goodsell*, 129 Nev. 403, 407, 305 P.3d 70, 72 (Nev. 2013) (quoting Restatement (Second) of Judgments § 27 cmt. D (1982)).This turns on whether "'the common issue was ... necessary to the judgment in the earlier suit.'" *Id*. (quoting *Univ. of Nev. v. Tarkanian*, 110 Nev. 581, 599, 879 P.2d 1180, 1191 (Nev. 1994)).

Here, the common issue—whether NDOC properly or improperly refused to apply statutory credits to Plaintiff's minimum parole eligibility—was actually litigated in the prior litigation, and was undoubtedly necessary to the judgment in the earlier suit. Therefore, this prong of issue preclusion is satisfied.

Finally, Plaintiff appears to argue he did not have a full and fair opportunity to litigate the issue because he was not given an opportunity to present oral argument at a hearing, and he contends the court did not fully address the issues. (ECF No. 31 at 16.)

As was set forth above, Judge Russell did engage in a full discussion of the issues. Plaintiff was allowed to fully brief the issues, and did so in a lengthy habeas petition. An inmate filing a habeas petition in Nevada is not entitled to an evidentiary hearing "if the record belies or repels the allegations." *State v. Eighth Jud. Dist. Ct. ex. rel. Clark Cnty*, 121 Nev. 225, 232, 112

P.3d 1070, 1075 (Nev. 2005); *see also* NRS 34.770 ("If the judge or justice determines that the petitioner is not entitled to relief and an evidentiary hearing is not required, the judge or justice shall dismiss the petition without a hearing."). An order that finally disposes of a petition with or without an evidentiary hearing must contain specific findings of fact and conclusions of law supporting the court's decision. NRS 34.830(1). Judge Russell satisfied his duties under Nevada law in determining an evidentiary hearing was not required, and issuing a decision with specific findings of fact and conclusions of law.

The basis of Count II in this action is that NDOC officials were improperly not applying statutory credits to his minimum parole eligibility. Since Plaintiff is precluded from relitigating this issue, Count II necessarily fails, and summary judgment should be granted in Defendants favor as to Count II.

In light of the court's findings, it need not address the arguments regarding the merits of Plaintiff's equal protection claim, qualified immunity, or that this case should not come within the *Nonnette* exception.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 18, 2019

_____
William G. Cobb
United States Magistrate Judge